

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 18, 2019

**BY ECF**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   United States v. Marcos Elias, 18 Cr. 419 (GHW)

Dear Judge Woods:

The defendant in the above-captioned case, Marcos Elias, is scheduled to be sentenced on April 25, 2019 at 2:00 p.m., after pleading guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 ("Count One"), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (b) ("Count Four"). The Government respectfully submits this letter in advance of the sentencing and in response to the defendant's sentencing submission filed on April 11, 2019 (ECF No. 42) ("Def. Mem.").

As an initial matter, the Government does not have any objections to the Presentence Investigation Report filed on April 17, 2019 (the "PSR"), which determined that the defendant's applicable United States Sentencing Guidelines (the "Guidelines") sentence is 33 to 41 months' imprisonment on Count One followed by a mandatory consecutive sentence of two year's imprisonment on Count Four and recommended a total sentence of 57 months' imprisonment. (PSR ¶ 64 and p. 18.) For the reasons set forth below, the Government respectfully submits that the Court sentence the defendant to a term of imprisonment within the Guidelines sentencing range on Count One, which together with the two-year mandatory minimum would be sufficient but not greater than necessary to serve the purposes of sentencing and would be fair and appropriate in this case.

## I.    APPLICABLE LAW

As the Court is aware, the Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), although they are no longer mandatory. "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" – that range "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). As the Second Circuit has noted, although the Guidelines do not dictate a presumptively

Hon. Gregory H. Woods
April 18, 2019
Page 2 of 7

reasonable sentence, they are not merely a "body of casual advice."  *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a):  (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims."  18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)      to afford adequate deterrence to criminal conduct;

(C)      to protect the public from further crimes of the defendant; and

(D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  To the extent the Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall,* 552 U.S. at 50).

## II.    DISCUSSION

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) supports the imposition of a Guidelines sentence of 33 to 41 months' imprisonment on Count One followed by the mandatory consecutive two-year sentence of imprisonment on Count Four.

### A.      The Seriousness of the Defendant's Conduct and the Need for Just Punishment

First, a sentence within the Guidelines range is necessary to reflect the seriousness of the defendant's conduct and to provide just punishment for the offense.  Here, the defendant perpetrated a complex fraud scheme in which he assumed the identity of a member of a wealthy Brazilian family (the "Victim") in order to steal approximately $752,000 from a brokerage account at a financial institution headquartered in Manhattan ("Firm-1") by transferring it to a

Hon. Gregory H. Woods
April 18, 2019
Page 3 of 7

bank account under his control in Luxembourg.  Then, after the defendant's fraud succeeded, he sought to assume the identity of other members of the same Brazilian family in order to steal even more money from their accounts at a second financial institution headquartered in Manhattan ("Firm-2").

The fraud began when Elias received a phone call from a childhood friend ("CW") who worked at the Firm.  CW was tasked with trying to locate a contact for a Brazilian company (the "Company") owned by the Victim's family that had a dormant brokerage account at the Firm with deposits totaling approximately $752,000 (the "Company Account").  (PSR ¶ 16.)  After CW asked Elias about whether Elias knew anyone at the Company he could speak with regarding the Company Account and Elias requested further information about the Company Account, CW sent Elias an email containing confidential account information about the Company Account, including the account number and account name.  (*Id*.)  Within five days of receiving that email from CW, Elias set up a Gmail account in the Victim's name and emailed forged wire instructions to CW on the Company's letterhead that were purportedly signed by the Victim.  (*Id*. ¶ 17.)  Those wire instructions instructed CW to transfer all the money in the Company Account to an account in the name of "Carrol Gardens Ltd." owned by Elias's business associate.  (*Id*.)

After another Firm employee said that the money in the Company Account could only be transferred to an account in the name of the Company (*id.*), Elias registered a Panamanian company with a name similar to that of the Company (the "Spoofed Company") and opened a bank account for the Spoofed Company at a bank located in Luxembourg, a country historically known for its bank secrecy (*id*. ¶ 19).  One week after the Spoofed Company was constituted in Panama, Elias sent another email purporting to be from the Victim to CW, this time from an email address with a domain that appeared to be similar to the Company's actual domain for its email addresses.  (*Id*. ¶ 18-19.)   This latest email instructed CW to wire transfer all the money in the Company Account to the Luxembourg bank account of the Spoofed Company and also purported to be signed by the Victim.  (*Id*. ¶ 19.)  This time the wire transfer did succeed.  On July 15, 2014, the approximately $752,000 in the Company Account was transferred to the Luxembourg bank account of the Spoofed Company, which was beneficially owned by Elias.  (*Id*.)  Importantly, on May 27, 2015, two weeks after the Victim's family notified the Firm of the fraud, Elias closed the Luxembourg bank account and the Panama company was dissolved a few weeks later on June 10, 2015.  (*Id*. ¶ 21.)

Having succeeded in stealing over $750,000 from the Company by using the Victim's identity, Elias did not stop his criminal conduct.  Rather, he attempted to steal even more money from the Victim's family from another bank, Firm-2.  (*Id*. ¶ 22.)  On November 14, 2014, about five months after he had stolen the money from the Company Account, Elias emailed CW with the names of other members of the Victim's family at Firm-2 so that CW could assist him in finding other accounts that he could steal from.  (*Id*.)  In order to facilitate getting information from Firm-2, Elias provided CW and another person who was helping them with forged powers of attorney and a passport for another member of the Victim's family that were sent to Firm-2.  (*Id*.)  Fortunately, despite his best efforts, Elias did not succeed in fraudulently obtaining control of other accounts belonging to the Victim's family.

Hon. Gregory H. Woods
April 18, 2019
Page 4 of 7

As described above, the defendant was the mastermind behind this fraud. While the defendant appears to suggest that "[CW] and Marcos set up false email accounts and forged the wire transfer instructions" (Def. Mem. at 11), that is simply inconsistent with the evidence. When CW first reached out to Elias about the Company Account, CW was acting in good faith to find a contact for the Company. Elias then misled CW, at least initially, into believing that Elias was in contact with the Victim regarding the Company Account when he was not. (*See* Exhibit A (Elias emailing the Victim, a copy of which he sent to CW, and then Elias falsely telling CW that the Victim had called Elias).)[1] Of course CW later realized that Elias was engaged in fraud and CW facilitated it, but it was Elias and Elias alone who was creating email accounts in the Victim's name and forging wire transfer instructions using the Victim's identity and signature. Indeed, it is not in dispute that every penny of the over $750,000 stolen from the Company Account went to Elias. CW did not receive any of the fraud proceeds, which is consistent with the evidence showing that Elias was the one who initiated the fraud scheme, sent the fraudulent wire transfer instructions, and profited from the fraud.[2]

In his sentencing submission, Elias repeatedly characterizes his criminal conduct as "aberrational" (Def. Mem. at 3, 10) and also as a "lapse of judgment" (*id.* at 1) and "amateurish" (*id.* at 12). The evidence, however, paints a very different picture of Elias as a sophisticated global fraudster who engaged in calculated conduct over a series of months to defraud multiple victims and took steps to cover his tracks. In order to commit this fraud, Elias engaged in the following conduct: (1) he created a Gmail account in the Victim's name; (2) he registered an email domain that was similar to the Company's actual email domain; (3) he created a company in Panama (the Spoofed Company) with a name similar to the Company and with its own corporate documents, share certificates, board minutes and directors (none of which were Elias); (4) he opened a bank account in Luxembourg in the name of the Spoofed Company; (5) he forged two sets of wire instructions using the Victim's signature; (6) he transferred the stolen funds from his Luxembourg bank account to various other bank accounts; (7) he closed the bank account in Luxembourg and dissolved the Spoofed Company shortly after the fraud was discovered; and (8) he forged two powers of attorney and a passport to try to steal money from other accounts of the Victim and his family at Firm-2 more than five months after he stole the money from the Company Account. These numerous actions over the course of a year were not the result of a single mistake or lapse of judgment, but rather was a deliberate course of fraudulent conduct to deceive employees of Firm-1 and Firm-2 and steal money from multiple victims by someone who knew how to commit fraud.

---

[1] Exhibit A was originally in Portuguese and the Government has provided a draft English translation.

[2] While Elias has accepted responsibility for his criminal conduct by pleading guilty, based on his sentencing submission there appears to be a discrepancy between his account and CW's account regarding at least the initial stages of the fraud. The Government credits the CW's account based on all the evidence in the case.

Hon. Gregory H. Woods
April 18, 2019
Page 5 of 7

The defendant's claim that he did "little to hide the evidence of [his] wrongdoing" (Def. Mem. at 12) is also belied by the multiple email accounts in the Victim's name that could not directly be tied back to him, the spoofed email containing the Company's name that could not directly be tied back to him, the Panamanian company he created that could not directly be tied back to him, and his choice to transfer the stolen money to an account in Luxembourg which he closed as soon as the fraud was discovered. Further, by the time the Government had obtained a search warrant for the defendant's personal email account that was believed to have been used in connection with the fraud, the defendant had deleted that account. This demonstrates that the defendant had in fact taken multiple steps to conceal his identity from law enforcement and even deleted evidence of his crimes that he knew may by sought by law enforcement.

For the reasons set forth above, a Guidelines sentence on Count One is necessary to reflect the seriousness of the defendant's conduct and to provide just punishment for the offense.

### B.      The Need for Specific Deterrence and to Protect the Public

Second, a sentence within the Guidelines range is necessary for specific deterrence to this defendant and to protect the public from further crimes of the defendant. For the five years leading up to this crime, it appears that the defendant was gainfully employed earning at least $150,000 a year (PSR ¶ 60), that he had a loving family with three children, and that he had the support of numerous family members and friends, many of whom wrote letters to the Court in connection with this sentencing. Moreover, even in 2014 when the crime against the Company was committed, the defendant appears to have sold his company Empiricus Research for $200,000. (*Id.*).[3] Nevertheless, despite all of this support, his significant financial success throughout his career, and the fact that the defendant was certainly aware of the potential legal consequences of his criminal conduct, the defendant chose to engage in the instant offense, thereby putting his ability to be with his family at risk.

Importantly, the defendant's claim that he used the stolen funds "to pay down his familial obligations and debts" is also undermined by the evidence. (Def. Mem. at 12.) Based on the Government's review of the statements for the bank account in Luxembourg that received the stolen funds (*see* Exhibit B), the defendant appears to have used the money he stole to make investments. Specifically, within two weeks of receiving the approximately $752,000 from the Company Account, Elias transferred approximately $136,00 to other accounts that could not be traced to him, bought approximately $156,000 in U.S. stocks, and then exchanged a majority of the remaining money into foreign currency, namely Pounds, Euros, Francs, and Yen, which he then used to invest in foreign stocks. In fact, a majority of the money in the account was not transferred out of the account until May 18, 2015, around the same time when the fraud was discovered by the Company. Such investment activity is consistent with Elias's extensive experience in finance and his representations to the Luxembourg bank that he had over ten years of experience in investing, had a "high" risk appetite, and was seeking long-term aggressive

---

[3] Elias's submission states that he sold the company for the "modest sum" of $50,000. (Def. Mem. at 7.)

Hon. Gregory H. Woods
April 18, 2019
Page 6 of 7

capital growth through these investments.   It is not, however, consistent with Elias's
representations that he committed this crime due to "mounting financial pressures" and the need
to "stabilize and provide for his family." (Def Mem. at 1, 12.)  In light of the above and given
that Elias was earning six figures for at least the five years leading up to this crime and likely had
significant earnings from prior jobs at well-known firms,[4] this was not a crime that Elias
committed out of desperation to pay necessary family expenses.  Rather, it was a crime of
opportunity and greed, the latter of which became clear when Elias attempted to steal from after
other accounts belonging to the Victim's family at Firm-2.

Accordingly, a Guidelines sentence on Count One is necessary to discourage the
defendant from committing further crimes following his release from prison and would impress
upon him the serious consequences of his criminal conduct.

### C.        The Need for General Deterrence and to Promote Respect for the Law

Third, a Guidelines sentence on Count One is appropriate to ensure adequate general
deterrence and to promote respect for the law.  Based on the most recent data available, the
Bureau of Justice Statistics estimates that in 2016 "10% of persons age 16 or older had been
victims of identity theft during the prior 12 months."[5]  Such identity theft and fraud has become a
prevalent crime that affects numerous Americans daily, causing financial difficulties and
emotional distress for those individual victims whose security is compromised as well as the
financial institutions, like here, that are defrauded.  A prison sentence within the Guidelines
range is therefore necessary to send a message to other similarly situated individuals and the
public that participating in identity theft and fraud will not be treated leniently and will entail a
significant period of incarceration.  Such a message is particularly important at a time when such
crimes, which are often difficult to prosecute, have become commonplace.  Accordingly, a
sentence within the Guidelines range is both necessary and appropriate to promote general
deterrence and respect for the law.

### D.        The Defendant's Requested Sentence of Probation on Count One Is Wholly
###           Inadequate and Contrary to Law

The defendant's recommended sentence of probation on Count One (Def. Mem. at 3, 30)
is contrary to law and wholly insufficient to achieve the purposes of sentencing, as discussed
above.  As an initial matter, the "aggravated identity theft statute provides that 'in determining
any term of imprisonment to be imposed for the [underlying] felony' — here, Count One — the
district court 'shall not in any way reduce the term to be imposed for such crime so as to
compensate for, or otherwise take into account' the two-year mandatory consecutive sentence for
the aggravated identity theft offense."  *United States* v. *Mends*, 412 F. App'x 370, 375 n.6 (2d
Cir. 2011) (quoting 18 U.S.C. § 1028A(b)(3)); *see also Dean v. United States*, 137 S. Ct. 1170,

---

[4] The Government notes that because the defendant did not provide a financial disclosure to the
Probation Department despite being requested (PSR ¶ 61), the Government was not able to
determine how the amount of stolen funds compares to the defendant's assets.
[5] *See* https://www.bjs.gov/index.cfm?ty=pbdetail&iid=646.

Hon. Gregory H. Woods
April 18, 2019
Page 7 of 7

1177 (2017) ("§1028A . . . underscores that for over a decade Congress has been aware of a clear way to bar consideration of a mandatory minimum.").  By the plain terms of the aggravated identity theft statute, Congress determined that Count Four warrants a two-year consecutive sentence and that the Court must independently sentence the defendant on the underlying conduct in Count One without considering the two-year sentence.  *See United States* v. *Guillen-Esquivel*, 534 F.3d 817, 819 (8th Cir. 2008) (reversing sentence of seven days on the predicate felony where the district court "took into account the twenty-four month sentence in concluding the overall sentence would be excessive if it chose a sentence for [the underlying felony] within the advisory guideline range"); *United States* v. *Omole*, 523 F.3d 691, 699 (7th Cir. 2007) (holding that had the sentencing judge "even slightly factored" Section 1028A's mandatory two-year sentence into his decision to lean toward a lighter sentence on the predicate felony counts, "he would have violated 18 U.S.C. § 1028A(b)(3)").

The Court must therefore determine the sentence on Count One independently of the two-year sentence on Count One, which renders a sentence of probation on Count One wholly inadequate and contrary to law.

## III.   CONCLUSION

For the reasons set forth above, Government respectfully submits that a Guidelines sentence of 33 to 41 months' imprisonment on Count One followed by a two-year consecutive sentence of imprisonment on Count Four is sufficient but not greater than necessary to achieve the purposes of sentencing and would be fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Sagar K. Ravi
Assistant United States Attorney
(212) 637-2195

# EXHIBIT A

**From:** Marcos Elias - Laplace ███████████████
**Sent:** Tuesday, June 24, 2014 7:08 AM
**To:** ████████████████
**Subject:** RE: Conta ████████

Ele me ligou agora pela manhã e eu estava em reunião.
Vou ligar-lhe de volta e te dou feedback asap.

**Marcos Elias**
Laplace Finanças

███████████████████████████████

Brasil

O conteúdo desta mensagem é confidencial e destinado exclusivamente aos destinatários. Caso a receba por engano, favor destruí-la e notificar o remetente de imediato. O correio eletrônico não configura meio seguro para transmissão de dados e o remetente NÃO se responsabiliza por eventual erro, atraso, extravio, interceptação ou infecção por vírus. Eventual erro de transmissão desta mensagem em nenhuma hipótese constituirá renuncia a confidencialidade ou a qualquer direito ou prerrogativa decorrente da mesma. As informações contidas nessa mensagem não são e não devem ser consideradas oferta ou divulgação de investimentos

The content of this message is confidential and was intended solely to its recipient. In case this message is received by mistake, please destroy it and notify the sender immediately. Electronic mails are not a safe channel for data transmission and the sender accepts NO liability for eventual errors, delays, loss, interception or virus infection. No confidentiality or privilege is waived by any mistransmission. The information contained in this message is not and may not be understood as an offer or disclosure of any investments

**From:** ████████████████████████
**Sent:** 23 June 2014 15:34
**To:** Marcos Elias - Laplace
**Subject:** Re: Conta ████████

Alguma resposta?

Sent by ███████████████

On Mon, Jun 23, 2014 at 7:32 AM, Marcos Elias - Laplace <████████████████> wrote:

████,

Bom dia.

Sou Marcos Elias, gestor de recursos em SP.

O Managing Director do Banco████████ me pediu assistência para contatar-lhes posto que vocês (████████████████████) tem uma conta na instituição supramencionada com cadastro a ser completado.

O Telefone de minha secretária é o ████████████ e o meu celular é o ████████████

Aguardo vosso retorno.

Forte abraço,

**Marcos Elias**
Laplace Finanças

███████████████████████████████

Brasil

O conteúdo desta mensagem é confidencial e destinado exclusivamente aos destinatários. Caso a receba por engano, favor destruí-la e notificar o remetente de imediato. O correio eletrônico não configura meio seguro para transmissão de dados e o remetente NÃO se responsabiliza por eventual erro, atraso, extravio, interceptação ou infecção por vírus. Eventual erro de transmissão desta mensagem em nenhuma hipótese constituirá renuncia a confidencialidade ou a qualquer direito ou prerrogativa decorrente da mesma. As informações contidas nessa mensagem não são e não devem ser consideradas oferta ou divulgação de investimentos

The content of this message is confidential and was intended solely to its recipient. In case this message is received by mistake, please destroy it and notify the sender immediately. Electronic mails are not a safe channel for data transmission and the sender accepts NO liability for eventual errors, delays, loss, interception or virus infection. No confidentiality or privilege is waived by any mistransmission. The information contained in this message is not and may not be understood as an offer or disclosure of any investments

# EXHIBIT A

DRAFT ENGLISH TRANSLATION

**From:** Marcos Elias - Laplace [█████████████████████]
**Sent:** Tuesday, June 24, 2014 7:08 AM
**To:** █████████████████████
**Subject:** RE: ███████ Account

He called me this morning and I was in a meeting.
I'm going to return his call and I'll give you feedback as soon as possible.

Marcos Elias
Laplace Finanças

████████████████████████

Brasil

O conteúdo desta mensagem é confidencial e destinado exclusivamente aos destinatários. Caso a
receba por engano, favor destruí-la e notificar o remetente de imediato. O correio eletrônico não
configura meio seguro para transmissão de dados e o remetente NÃO se responsabiliza por eventual
erro, atraso, extravio, interceptação ou infecção por vírus. Eventual erro de transmissão desta
mensagem em nenhuma hipótese constituirá renuncia a confidencialidade ou a qualquer direito ou
prerrogativa decorrente da mesma. As informações contidas nessa mensagem não são e não devem ser
consideradas oferta ou divulgação de investimentos

The content of this message is confidential and was intended solely to its recipient. In case this message
is received by mistake, please destroy it and notify the sender immediately. Electronic mails are not a
safe channel for data transmission and the sender accepts NO liability for eventual errors, delays, loss,
interception or virus infection. No confidentiality or privilege is waived by any mistransmission. The
information contained in this message is not and may not be understood as an offer or disclosure of any
investments

**From:** ███████████████████
**Sent:** 23 June 2014 15:34
**To:** Marcos Elias - Laplace
**Subject:** Re: ███████ Account

Any response?

Sent by ███████████████

On Mon, Jun 23, 2014 at 7:32 AM, Marcos Elias - Laplace <████████████████████>
wrote:



Good morning.

I'm Marcos Elias, resources manager in São Paulo.

The Managing Director of Banco ███████ asked for my help contacting you to let you know that you (███████████████████████) have an account in the abovementioned institution with registration to be completed.

My secretary's telephone is ███████████ and my cell phone is ███████████

I await your response.

Warm regards,

**Marcos Elias**

Laplace Finanças

███████████████████████

Brasil

O conteúdo desta mensagem é confidencial e destinado exclusivamente aos destinatários. Caso a receba por engano, favor destrui-la e notificar o remetente de imediato. O correio eletrônico não configura meio seguro para transmissão de dados e o remetente NÃO se responsabiliza por eventual erro, atraso, extravio, interceptação ou infecção por vírus. Eventual erro de transmissão desta mensagem em nenhuma hipótese constituirá renuncia a confidencialidade ou a qualquer direito ou prerrogativa decorrente da mesma. As informações contidas nessa mensagem não são e não devem ser consideradas oferta ou divulgação de investimentos

The content of this message is confidential and was intended solely to its recipient. In case this message is received by mistake, please destroy it and notify the sender immediately. Electronic mails are not a safe channel for data transmission and the sender accepts NO liability for eventual errors, delays, loss, interception or virus infection. No confidentiality or privilege is waived by any mistransmission. The information contained in this message is not and may not be understood as an offer or disclosure of any investments

# EXHIBIT B

ANNEXE "R"

- 2,FF200 COM. IND. (COLP

Statement of Account

US_00000589

# Operation History

Customer number: ▮   - from 02/01/2014 to 31/12/2015

| Operation Date | Value Date | Description | Debit | Credit |
|---|---|---|---|---|
| 23 Jul 2014 | 28 Jul 2014 | Buy 1'500 BRISTOL-MYERS SQUIBB CO -SHS @49.1106 USD | 74'498.79 USD | |
| 23 Jul 2014 | 28 Jul 2014 | Buy 1'000 SAP AG-SPONSORED ADR -SHS @82.416 USD | 82'683.29 USD | |
| 24 Jul 2014 | 29 Jul 2014 | Buy 2'000 SUMITOMO MITSUI FINANCIAL GROUP @4'052.50 JPY | 8'202'260 JPY | |
| 24 Jul 2014 | 29 Jul 2014 | Buy 700 DUFRY AG -SH @165.70 CHF | 116'461.37 CHF | |
| 24 Jul 2014 | 29 Jul 2014 | Buy 500 L'OREAL S.A. -SHS @128.35 EUR | 65'073.46 EUR | |
| 24 Jul 2014 | 29 Jul 2014 | Buy 400 ROCHE HOLDING AG-GENUSSCHEIN -SHS @270.00 CHF | 108'438.95 CHF | |
| 24 Jul 2014 | 29 Jul 2014 | Buy 3'000 BURBERRY GROUP PLC -SHS @14.48 GBP | 43'832.18 GBP | |
| 28 Jul 2014 | 28 Jul 2014 | Buy EUR 65'073 / Sell USD 87'523 @1.345 | | |
| 28 Jul 2014 | 28 Jul 2014 | Buy GBP 43'832 / Sell USD 74'549 @1.7008 | | |
| 28 Jul 2014 | 29 Jul 2014 | Sell USD 249'141 / Buy CHF 224'900 @0.9027 | | |
| 28 Jul 2014 | 29 Jul 2014 | Sell USD 80'659 / Buy JPY 8'202'260 @101.6906 | | |
| 28 Jul 2014 | 31 Jul 2014 | Buy 2'500 ITAU UNIBANCO HOLDING SA PFD SHS @15.95 USD | 40'391.00 USD | |
| 22 Sep 2014 | 25 Sep 2014 | Buy 330 MICHAEL KORS HOLDINGS LIMITED -SHS @75.71 USD | 25'304.11 USD | |
| 24 Sep 2014 | 29 Sep 2014 | Buy 260 DUFRY AG -SH @147.00 CHF | 38'414.98 CHF | |
| 24 Sep 2014 | 29 Sep 2014 | Buy 550 SAP AG-SPONSORED ADR -SHS @72.93 USD | 40'271.95 USD | |
| 25 Sep 2014 | 30 Sep 2014 | Sell 2'000 SUMITOMO MITSUI FINANCIAL GROUP @4'528.50 JPY | | 9'011'715 JPY |
| 29 Sep 2014 | 02 Oct 2014 | Buy 1'050 ITAU UNIBANCO HOLDING SA PFD SHS @14.33 USD | 15'276.80 USD | |
| 02 Oct 2014 | 06 Oct 2014 | Buy USD 82'676 / Sell JPY 9'011'715 @109.0004 | | |
| 02 Oct 2014 | 07 Oct 2014 | Buy 2'000 LIBERTY MEDIA CORP @46.03 USD | 92'550.30 USD | |
| 02 Oct 2014 | 07 Oct 2014 | Sell 1'500 BRISTOL-MYERS SQUIBB CO -SHS @50.53 USD | | 75'391.84 USD |
| 02 Oct 2014 | 07 Oct 2014 | Sell 400 ROCHE HOLDING AG-GENUSSCHEIN -SHS @280.50 CHF | | 111'519.65 CHF |
| 02 Oct 2014 | 07 Oct 2014 | Buy 1'300 MICHAEL KORS HOLDINGS LIMITED -SHS @71.42 USD | 93'330.24 USD | |
| 02 Oct 2014 | 07 Oct 2014 | Buy 1'900 ITAU UNIBANCO HOLDING SA PFD SHS @13.58 USD | 25'959.51 USD | |
| 08 Oct 2014 | 14 Oct 2014 | Buy 1'000 SAP AG-SPONSORED ADR -SHS @68.26 USD | 68'621.30 USD | |
| 08 Oct 2014 | 14 Oct 2014 | Sell 1'830 MICHAEL KORS HOLDINGS LIMITED -SHS @75.741 USD | | 122'813.36 USD |
| 08 Oct 2014 | 14 Oct 2014 | Buy 4'500 ITAU UNIBANCO HOLDING SA PFD SHS @14.8698 USD | 67'316.03 USD | |
| 09 Oct 2014 | 10 Oct 2014 | Sell CHF 73'104.67 / Buy USD 75'554.14 @0.9676 | | |
| 14 Oct 2014 | 16 Oct 2014 | Buy 430 DUFRY AG -SH @128.50 CHF | 55'586.53 CHF | |
| 14 Oct 2014 | 16 Oct 2014 | Buy 2'300 BURBERRY GROUP PLC -SHS @14.2087 GBP | 33'040.58 GBP | |
| 14 Oct 2014 | 17 Oct 2014 | Buy 720 MICHAEL KORS HOLDINGS LIMITED -SHS @72.6328 USD | 52'577.07 USD | |
| 14 Oct 2014 | 17 Oct 2014 | Sell 9'950 ITAU UNIBANCO HOLDING SA PFD SHS @15.75 USD | | 155'776.23 USD |

Produced on: 31 Dec 2015

S.E.&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation. Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

6/17

US_00000595

Customer number [REDACTED] from 02/01/2014 to 31/12/2015

| Operation Date | Value Date | Description | Debit | Credit |
|---|---|---|---|---|
| 21 Oct 2014 | 23 Oct 2014 | Buy GBP 33'040.58 / Sell USD 54'524.54 @1.6502 | | |
| 21 Oct 2014 | 23 Oct 2014 | Buy CHF 55'586.53 / Sell USD 60'309.36 @0.9217 | | |
| 21 Oct 2014 | 23 Oct 2014 | Sell 5'300 BURBERRY GROUP PLC -SHS @14.61 GBP | | 76'967.40 GBP |
| 21 Oct 2014 | 24 Oct 2014 | Sell 720 MICHAEL KORS HOLDINGS LIMITED -SHS @74.9342 USD | | 53'661.67 USD |
| 21 Oct 2014 | 24 Oct 2014 | Buy 13'000 ITAU UNIBANCO HOLDING SA PFD SHS @13.72 USD | 179'446.80 USD | |
| 23 Oct 2014 | 28 Oct 2014 | Sell 2'000 LIBERTY MEDIA CORP @45.9269 USD | | 91'394.53 USD |
| 23 Oct 2014 | 28 Oct 2014 | Buy 7'000 ITAU UNIBANCO HOLDING SA PFD SHS @13.0799 USD | 92'122.10 USD | |
| 27 Oct 2014 | 28 Oct 2014 | Sell GBP 76'967.4 / Buy USD 121'484.49 @1.5784 | | |
| 27 Oct 2014 | 29 Oct 2014 | Sell 500 L'OREAL S.A. -SHS @120.45 EUR | | 59'863.66 EUR |
| 27 Oct 2014 | 30 Oct 2014 | Buy 8'000 ITAU UNIBANCO HOLDING SA PFD SHS @12.2816 USD | 98'864.06 USD | |
| 29 Oct 2014 | 30 Oct 2014 | Sell EUR 59'863.66 / Buy USD 75'72253 @1.265 | | |
| 28 Nov 2014 | 02 Dec 2014 | Sell 1'390 DUFRY AG -SH @151.9466 CHF | | 209'072.52 CHF |
| 28 Nov 2014 | 03 Dec 2014 | Buy USD 217'507 / Sell CHF 209'938 @0.9652 | | |
| 28 Nov 2014 | 03 Dec 2014 | Buy 22'900 PETROLEO BRASILEIRO S.A.-ADR -SHS @9.6343 USD | 222'954.60 USD | |
| 01 Dec 2014 | 04 Dec 2014 | Sell 2'550 SAP AG-SPONSORED ADR -SHS @71.1708 USD | | 179'809.90 USD |
| 01 Dec 2014 | 04 Dec 2014 | Buy 20'200 PETROLEO BRASILEIRO S.A.-ADR -SHS @8.9797 USD | 183'325.45 USD | |
| 10 Dec 2014 | 15 Dec 2014 | Buy 48'000 PETROLEO BRASILEIRO S.A.-ADR -SHS @7.7599 USD | 375'802.53 USD | |
| 10 Dec 2014 | 15 Dec 2014 | Sell 28'000 ITAU UNIBANCO HOLDING SA PFD SHS @13.3951 USD | | 372'009.07 USD |
| 29 Dec 2014 | 02 Jan 2015 | Buy 8'900 PETROLEO BRASILEIRO S.A.-ADR -SHS @7.33 USD | 66'088.11 USD | |
| 28 Jan 2015 | 02 Feb 2015 | Buy 10'000 PETROLEO BRASILEIRO S.A.-ADR -SHS @6.81 USD | 68'999.10 USD | |
| 07 Apr 2015 | 07 Apr 2015 | Sell Open 1'100x100 PETROLEO BR SP ADR CALL JAN16 10 @0.55 USD | | 59'795.00 USD |
| 16 Apr 2015 | 21 Apr 2015 | Buy 1'650 YPF SOCIEDAD ANONIMA YACIMIENTOS @30.7568 USD | 51'331.71 USD | |
| 13 May 2015 | 13 May 2015 | Buy Close 1'100x100 PETROLEO BR SP ADR CALL JAN16 10 @1.55 USD | 174'900.00 USD | |
| 13 May 2015 | 18 May 2015 | Sell 1'650 YPF SOCIEDAD ANONIMA YACIMIENTOS @31.1612 USD | | 50'824.72 USD |
| 13 May 2015 | 18 May 2015 | Sell 110'000 PETROLEO BRASILEIRO S.A.-ADR -SHS @9.835 USD | | 1'074'770.84 USD |
| 12 Jun 2015 | 12 Jun 2015 | Buy JPY 6'746 / Sell USD 55.65 @121.2219 | | |

S.E&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.
Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

Produced on 31 Dec 2015

7/17

US_00000596

Customer number: [redacted]

from 02/01/2014 to 31/12/2015

## Cash Movements: USD

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| Balance as of 01 Jan 2014 | | | | | 0.00 USD |
| 18 Jul 2014 | 18 Jul 2014 | Transfer - Entry 752'384.57<br>Orderer:<br><br>Reference: | | 752'384.57 USD | 752'384.57 USD |
| 21 Jul 2014 | 22 Jul 2014 | Transfer - TRANSFER | 85'000.00 USD | | 667'384.57 USD |
| 21 Jul 2014 | 22 Jul 2014 | Transfer - TRANSFER | 1'750.00 USD | | 665'634.57 USD |
| 23 Jul 2014 | 23 Jul 2014 | Transfer - Outgoing Amount USD 13'000<br>Beneficiary:<br><br>ET SHIR LLC | 13'040.00 USD | | 652'594.57 USD |
| 23 Jul 2014 | 23 Jul 2014 | Transfer - Outgoing Amount USD 37'000<br>Beneficiary:<br><br>Golden Bridge Garment Trading<br>Ltd | 37'040.00 USD | | 615'554.57 USD |
| 23 Jul 2014 | 28 Jul 2014 | Buy 1'500 BRISTOL-MYERS SQUIBB CO -SHS @49.1106 USD<br>Reference:<br>with 0.3%comm | 74'498.80 USD | | 541'055.77 USD |
| 23 Jul 2014 | 28 Jul 2014 | Buy 1'000 SAP AG-SPONSORED ADR -SHS @82.416 USD<br>Reference:<br>with 0.3% comm | 82'683.29 USD | | 458'372.48 USD |
| 28 Jul 2014 | 28 Jul 2014 | Buy GBP 43'832 / Sell USD 74'549 @1.7008 | 74'549.00 USD | | 383'823.48 USD |
| 28 Jul 2014 | 28 Jul 2014 | Buy EUR 65'073 / Sell USD 87'523 @1.345 | 87'523.00 USD | | 296'300.48 USD |
| 28 Jul 2014 | 29 Jul 2014 | Sell USD 249'141 / Buy CHF 224'900 @0.9027 | 249'141.00 USD | | 47'159.48 USD |
| 28 Jul 2014 | 29 Jul 2014 | Sell USD 80'659 / Buy JPY 8'200'260 @101.6906 | 80'659.00 USD | | -33'499.52 USD |
| 28 Jul 2014 | 28 Jul 2014 | Buy 2'500 ITAU UNIBANCO HOLDING SA PFD SHS @15.95 USD | 40'391.00 USD | | -73'890.52 USD |
| 29 Jul 2014 | 31 Jul 2014 | Transfer - Foreign exchange Spot 0.32  USD | 0.36 USD | | -73'890.88 USD |
| 29 Jul 2014 | 31 Jul 2014 | Transfer - Foreign exchange Spot 0.18  USD | 0.31 USD | | -73'891.19 USD |
| 29 Jul 2014 | 31 Jul 2014 | Transfer - Foreign exchange Spot 0.46  USD | 0.62 USD | | -73'891.81 USD |
| 31 Jul 2014 | 31 Jul 2014 | Debit interest - Debit int. as of 31.07.14 USD 7.71 | 7.71 USD | | -73'899.52 USD |
| 31 Jul 2014 | 31 Jul 2014 | Debit interest - Adjust. debit int. as of 31.07.14 USD 3.68 | | 3.68 USD | -73'895.84 USD |

S.E.&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.
Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

8/17

US_00000597

Customer number ▮▮▮   from 02/01/2014 to 31/12/2015

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 21 Aug 2014 | 28 Jul 2014 | Transfer - Fees USD 300 Reference: FILE OPENING FEES CREDIT LINE | 300.00 USD | | -74'195.84 USD |
| 29 Aug 2014 | 31 Aug 2014 | Debit interest - Debit int. as of 31.08.14 USD 137.98 | 137.98 USD | | -74'333.82 USD |
| 04 Sep 2014 | 04 Sep 2014 | Dividend 2'500 ITAU UNIBANCO HOLDING SA PFD SHS @0.1423 USD | | 302.34 USD | -74'031.48 USD |
| 11 Sep 2014 | 11 Sep 2014 | Dividend 2'500 ITAU UNIBANCO HOLDING SA PFD SHS @0.0067 USD | | 16.65 USD | -74'014.83 USD |
| 19 Sep 2014 | 30 Sep 2014 | Fee - Safekeeping Charges | 440.65 USD | | -74'455.48 USD |
| 22 Sep 2014 | 25 Sep 2014 | Buy 330  MICHAEL KORS HOLDINGS LIMITED -SHS @75.71 USD | 25'304.11 USD | | -99'759.59 USD |
| 24 Sep 2014 | 29 Sep 2014 | Buy 550 SAP AG-SPONSORED ADR -SHS @72.93 USD Reference: please charge 0.4% trade fee | 40'271.95 USD | | -140'031.54 USD |
| 24 Sep 2014 | 30 Sep 2014 | Fee - Account Maintenance Fees | 269.40 USD | | -140'300.94 USD |
| 29 Sep 2014 | 02 Oct 2014 | Buy 1'050 ITAU UNIBANCO HOLDING SA PFD SHS @14.33 USD | 15'276.80 USD | | -155'577.74 USD |
| 30 Sep 2014 | 30 Sep 2014 | Debit interest - Debit int. as of 30.09.14 143.56 | 143.56 USD | | -155'721.30 USD |
| 30 Sep 2014 | 30 Sep 2014 | Debit interest - Adjust. debit int. as of 30.09.14 USD 0.26 | | 0.26 USD | -155'721.04 USD |
| 01 Oct 2014 | 31 Oct 2014 | Reverse: Fee - Safekeeping Charges | | 493.81 USD | -155'227.23 USD |
| 01 Oct 2014 | 31 Oct 2014 | Reversed: Fee - Safekeeping Charges | 493.81 USD | | -155'721.04 USD |
| 02 Oct 2014 | 06 Oct 2014 | Buy USD 82'676 / Sell JPY 9'011'715 @109.0004 | | 82'676.00 USD | -73'045.04 USD |
| 02 Oct 2014 | 07 Oct 2014 | Sell 1'500  BRISTOL-MYERS SQUIBB CO -SHS @50.53 USD Reference: please charge 0.5% of the trade | | 75'391.84 USD | 2'346.80 USD |
| 02 Oct 2014 | 07 Oct 2014 | Buy 2'000  LIBERTY MEDIA CORP @46.03 USD Reference: please charde 0.5% of trade fee | 92'560.30 USD | | -90'203.50 USD |
| 02 Oct 2014 | 07 Oct 2014 | Buy 1'300  MICHAEL KORS HOLDINGS LIMITED -SHS @71.42 USD Reference: please charde 0.5% of trade | 93'330.24 USD | | -183'533.74 USD |
| 02 Oct 2014 | 07 Oct 2014 | Buy 1'900 ITAU UNIBANCO HOLDING SA PFD SHS @13.58 USD Reference: please charge 0.5% for trade fee | 25'959.51 USD | | -209'493.25 USD |
| 08 Oct 2014 | 14 Oct 2014 | Sell 1'630  MICHAEL KORS HOLDINGS LIMITED -SHS @75.741 USD Reference: please charge 0.5% of trade fee | | 122'813.36 USD | -86'679.89 USD |
| 08 Oct 2014 | 14 Oct 2014 | Buy 4'500 ITAU UNIBANCO HOLDING SA PFD SHS @14.8698 USD Reference: please charge 0.5% of trade fee | 67'316.03 USD | | -153'995.92 USD |
| 08 Oct 2014 | 14 Oct 2014 | Buy 1'000 SAP AG-SPONSORED ADR -SHS @68.26 USD Reference: charge 0.5% trade fee | 68'621.30 USD | | -222'617.22 USD |
| 09 Oct 2014 | 09 Oct 2014 | Transfer - ADR FEES DIV ITAU | 31.25 USD | | -222'648.47 USD |

S.E.&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.
Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

9/17

US_00000598

Customer number: ███████

from 02/01/2014 to 31/12/2015

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 09 Oct 2014 | 10 Oct 2014 | Sell CHF 73'104.67 / Buy USD 75'554.14  @1.0335 | | 75'554.14 USD | -147'094.33 USD |
| 14 Oct 2014 | 14 Oct 2014 | Dividend 2'500  ITAU UNIBANCO HOLDING SA PFD SHS @0.006 USD | | 15.05 USD | -147'079.28 USD |
| 14 Oct 2014 | 17 Oct 2014 | Sell 9'950  ITAU UNIBANCO HOLDING SA PFD SHS @15.75 USD<br>Reference:<br>please charge 0.5% of trade fee | | 155'776.23 USD | 8'696.95 USD |
| 14 Oct 2014 | 17 Oct 2014 | Buy 720  MICHAEL KORS HOLDINGS LIMITED -SHS @72.6328 USD<br>Reference:<br>Please charge 0.5% of trade fee | 52'577.07 USD | | -43'880.12 USD |
| 21 Oct 2014 | 23 Oct 2014 | Buy GBP 33'040.58 / Sell USD 54'524.54  @1.6502 | 54'524.54 USD | | -98'404.66 USD |
| 21 Oct 2014 | 23 Oct 2014 | Buy CHF 55'586.53 / Sell USD 60'309.36  @1.085 | 60'309.36 USD | | -158'714.02 USD |
| 21 Oct 2014 | 24 Oct 2014 | Sell 720  MICHAEL KORS HOLDINGS LIMITED -SHS @74.9342 USD<br>Reference:<br>Please charge 0.5% of trade fee | | 53'661.67 USD | -105'052.35 USD |
| 21 Oct 2014 | 24 Oct 2014 | Buy 13'000  ITAU UNIBANCO HOLDING SA PFD SHS @13.72 USD<br>Reference:<br>please charge 0.5% of Trade fee | 179'446.80 USD | | -284'499.15 USD |
| 23 Oct 2014 | 28 Oct 2014 | Sell 2'000  LIBERTY MEDIA CORP @45.9269 USD<br>Reference:<br>please charge 0.5% of trade fee | | 91'394.53 USD | -193'104.62 USD |
| 23 Oct 2014 | 28 Oct 2014 | Buy 7'000  ITAU UNIBANCO HOLDING SA PFD SHS @13.0799 USD<br>Reference:<br>please charge 0.5% of trade fee | 92'122.10 USD | | -285'226.72 USD |
| 27 Oct 2014 | 28 Oct 2014 | Sell GBP 76'9674 / Buy USD 121'484.49  @1.5784 | | 121'484.49 USD | -163'742.23 USD |
| 27 Oct 2014 | 30 Oct 2014 | Buy 8'000  ITAU UNIBANCO HOLDING SA PFD SHS @12.2816 USD<br>Reference:<br>Please charge 0.5% of trade fee | 98'864.06 USD | | -262'606.29 USD |
| 29 Oct 2014 | 30 Oct 2014 | Sell EUR 59'865.66 / Buy USD 75'272753  @1.265 | | 75'272753 USD | -186'878.76 USD |
| 31 Oct 2014 | 31 Oct 2014 | Debit interest - Debit int. as of 31.10.14 USD 280.53 | 280.53 USD | | -187'159.29 USD |
| 31 Oct 2014 | 31 Oct 2014 | Debit interest - Adjust. debit int. as of 31.10.14 USD 0.28 | | 0.28 USD | -187'159.01 USD |
| 03 Nov 2014 | 03 Nov 2014 | Dividend 1'500  BRISTOL-MYERS SQUIBB CO -SHS @0.36 USD | | 378.00 USD | -186'781.01 USD |
| 07 Nov 2014 | 10 Nov 2014 | Transfer - Fees<br>Reference:<br>Fees for incorporation of<br>Bundle Holdings SA | 1'750.00 USD | | -188'531.01 USD |
| 13 Nov 2014 | 13 Nov 2014 | Dividend 3'550  ITAU UNIBANCO HOLDING SA PFD SHS @0.006 USD | | 21.26 USD | -188'509.75 USD |
| 28 Nov 2014 | 30 Nov 2014 | Debit interest - Debit int. as of 30.11.14 USD 260.36 | 260.36 USD | | -188'770.11 USD |
| 28 Nov 2014 | 03 Dec 2014 | Buy USD 217'507 / Sell CHF 209'938  @0.9652 | | 217'50700 USD | 28'736.89 USD |
| 28 Nov 2014 | 03 Dec 2014 | Buy 22'900  PETROLEO BRASILEIRO S.A.-ADR -SHS @9.6343 USD | 222'954.60 USD | | -194'217.71 USD |
| 30 Nov 2014 | 30 Nov 2014 | Debit interest - Adjust. debit int. as of 30.11.14 USD 0.38 | | 0.38 USD | -194'217.33 USD |

Produced on 31 Dec 2015

S.E.&O.: Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.
Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

10/17

US_00000599

Customer number: ▇  - from 02/01/2014 to 31/12/2015

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 01 Dec 2014 | 04 Dec 2014 | Sell 2'550 SAP AG-SPONSORED ADR -SHS @71.1708 USD | | 179'809.90 USD | -141'407.43 USD |
| 01 Dec 2014 | 04 Dec 2014 | Buy 20'200 PETROLEO BRASILEIRO S.A-ADR-SHS @8.9797 USD | 183'325.45 USD | | -197'732.88 USD |
| 03 Dec 2014 | 03 Dec 2014 | Reverse: Dividend 2'000 SUMITOMO MITSUI FINANCIAL GROUP @60.00 JPY | 101'622.00 USD | | -299'354.88 USD |
| 03 Dec 2014 | 03 Dec 2014 | Reversed: Dividend 2'000 SUMITOMO MITSUI FINANCIAL GROUP @60.00 JPY | | 101'622.00 USD | -197'732.88 USD |
| 10 Dec 2014 | 15 Dec 2014 | Sell 28'000 ITAU UNIBANCO HOLDING SA PFD SHS @13.3961 USD | | 372'009.07 USD | 174'276.19 USD |
| 10 Dec 2014 | 15 Dec 2014 | Buy 48'000 PETROLEO BRASILEIRO S.A-ADR -SHS @7.7599 USD | 375'802.53 USD | | -201'526.34 USD |
| 11 Dec 2014 | 11 Dec 2014 | Dividend 28'000 ITAU UNIBANCO HOLDING SA PFD SHS @0.0058 USD | | 163.24 USD | -201'363.10 USD |
| 19 Dec 2014 | 31 Dec 2014 | Fee - Safekeeping Charges | 789.41 USD | | -202'132.51 USD |
| 22 Dec 2014 | 31 Dec 2014 | Fee - Account Maintenance Fees | 257.47 USD | | -202'389.98 USD |
| 29 Dec 2014 | 02 Jan 2015 | Buy 8'900 PETROLEO BRASILEIRO S.A-ADR -SHS @7.33 USD | 66'088.11 USD | | -268'478.09 USD |
| 31 Dec 2014 | 31 Dec 2014 | Debit interest - Debit int. as of 31.12.14 USD 284.26 | 284.26 USD | | -268'762.35 USD |
| 31 Dec 2014 | 31 Dec 2014 | Debit interest - Adjust. debit int. as of 31.12.14 USD 0.38 | | 0.38 USD | -268'761.97 USD |
| 12 Jan 2015 | 12 Jan 2015 | Dividend 28'000 ITAU UNIBANCO HOLDING SA PFD SHS @0.0056 USD | | 155.40 USD | -268'606.57 USD |
| 28 Jan 2015 | 02 Feb 2015 | Buy 10'000 PETROLEO BRASILEIRO S.A-ADR-SHS @6.81 USD | 68'999.10 USD | | -337'605.67 USD |
| 30 Jan 2015 | 31 Jan 2015 | Debit interest - Debit int. as of 31.01.15 USD 418.71 | 418.71 USD | | -338'024.38 USD |
| 31 Jan 2015 | 31 Jan 2015 | Debit interest - Adjust. debit int. as of 31.01.15 USD 0.97 | | 0.97 USD | -338'023.41 USD |
| 10 Feb 2015 | 02 Feb 2015 | Transfer - Fees USD 32787 Reference FILE OPENING FEES | 327.87 USD | | -338'351.28 USD |
| 27 Feb 2015 | 28 Feb 2015 | Debit interest - Debit int. as of 28.02.16 USD 558.6 | 558.60 USD | | -338'909.88 USD |
| 28 Feb 2015 | 28 Feb 2015 | Debit interest - Adjust. debit int. as of 28.02.15 USD 0.74 | | 0.74 USD | -338'909.14 USD |
| 20 Mar 2015 | 31 Mar 2015 | Fee - Safekeeping Charges | 718.57 USD | | -339'627.71 USD |
| 27 Mar 2015 | 31 Mar 2015 | Fee - Account Maintenance Fees | 259.88 USD | | -339'887.59 USD |
| 31 Mar 2015 | 31 Mar 2015 | Debit interest - Debit int. as of 31.03.15 USD 634.33 | 634.33 USD | | -340'521.92 USD |
| 31 Mar 2015 | 31 Mar 2015 | Debit interest - Adjust. debit int. as of 31.03.15 USD 1.05 | | 1.05 USD | -340'520.87 USD |
| 07 Apr 2015 | 07 Apr 2015 | Sell 110'000 PETROLEO BR SP ADR CALL JAN16 10 @0.55 USD | | 59'795.00 USD | -280'725.87 USD |
| 16 Apr 2015 | 21 Apr 2015 | Buy 1'650 YPF SOCIEDAD ANONIMA YACIMIENTOS @30.7568 USD | 51'331.71 USD | | -332'057.58 USD |
| 30 Apr 2015 | 30 Apr 2015 | Debit interest - Debit int. as of 30.04.15 USD 564.35 | 564.35 USD | | -332'621.93 USD |
| 30 Apr 2015 | 30 Apr 2015 | Debit interest - Adjust. debit int. as of 30.04.15 USD 1.15 | | 1.15 USD | -332'620.78 USD |
| 13 May 2015 | 13 May 2015 | Buy 110'000 PETROLEO BR SP ADR CALL JAN16 10 @1.55 USD | 174'900.00 USD | | -507'520.78 USD |
| 13 May 2015 | 18 May 2015 | Sell 1'650 YPF SOCIEDAD ANONIMA YACIMIENTOS @31.1612 USD | | 50'824.72 USD | -456'696.06 USD |
| 13 May 2015 | 18 May 2015 | Sell 110'000 PETROLEO BRASILEIRO S.A-ADR -SHS @9.835 USD | | 1'074'770.84 USD | 618'074.78 USD |
| 18 May 2015 | 19 May 2015 | Transfer - TRANSFER | 615'000.00 USD | | 3'074.78 USD |
| 27 May 2015 | 29 May 2015 | Transfer - Foreign exchange Spot 28.9 USD | 44.93 USD | | 3'029.86 USD |

S.E&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation. Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

11/17

US_00000600

Customer number: ███████ - from 02/01/2014 to 31/12/2015

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 29 May 2015 | 31 May 2015 | Debit interest - Debit int. as of 31.05.15 USD 416.12 | 416.12 USD | | 2'613.73 USD |
| 31 May 2015 | 31 May 2015 | Debit interest - Adjust. debit int. as of 31.05.15 USD 0.61 | | 0.61 USD | 2'614.34 USD |
| 05 Jun 2015 | 08 Jun 2015 | Transfer - Fees dissolution and liquidation | 2'876.00 USD | | -261.66 USD |
| 08 Jun 2015 | 10 Jun 2015 | Transfer - Foreign exchange Spot 33'261  USD | | 262.27 USD | 0.61 USD |
| 12 Jun 2015 | 12 Jun 2015 | Fee - Safekeeping Charges | 601.50 USD | | -600.89 USD |
| 12 Jun 2015 | 12 Jun 2015 | Buy JPY 6'746 / Sell USD 55.65  @0.0082 | 55.65 USD | | -656.54 USD |
| 12 Jun 2015 | 16 Jun 2015 | Transfer - Foreign exchange Spot 75'107  USD | | 601.50 USD | -55.04 USD |
| 16 Jun 2015 | 12 Jun 2015 | Transfer - FEES REIMBURSEMENT | | 55.65 USD | 0.61 USD |
| 19 Aug 2015 | 20 Aug 2016 | Transfer - TRANSFER | 0.61 USD | | 0.00 USD |

Produced on 31 Dec 2015

S.E.&O. Prices stated are closing prices as of the date shown which is the last available.  In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.
Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

US_00000601

Customer number: ▓ from 02/01/2014 to 31/12/2015

## Cash Movements: EUR

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| Balance as of 01 Jan 2014 | | | | | 0.00 EUR |
| 24 Jul 2014 | 29 Jul 2014 | Buy 500 L'OREAL S.A. -SHS @128.35 EUR<br>Reference:<br>with 0.3%comm | 65'073.46 EUR | | -65'073.46 EUR |
| 28 Jul 2014 | 28 Jul 2014 | Buy EUR 65'073 / Sell USD 87'523  @1.345 | | 65'073.00 EUR | -0.46 EUR |
| 29 Jul 2014 | 31 Jul 2014 | Transfer - Foreign exchange Spot 0.62  EUR | | 0.46 EUR | 0.00 EUR |
| 27 Oct 2014 | 29 Oct 2014 | Sell 500 L'OREAL S.A. -SHS @120.45 EUR<br>Reference:<br>please charge 0.5% of trade fee | | 59'863.66 EUR | 59'863.66 EUR |
| 29 Oct 2014 | 30 Oct 2014 | Sell EUR 59'863.66 / Buy USD 75'727253 @1.265 | 59'863.66 EUR | | 0.00 EUR |

S.E.&O. Prices stated are closing prices as of the date shown which is the last available.  In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.
Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

Produced on 31 Dec 2015

13/17

US_00000602

Customer number: [redacted]    from 02/01/2014 to 31/12/2015

## Cash Movements: JPY

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| Balance as of 01 Jan 2014 | | | | | 0 JPY |
| 24 Jul 2014 | 29 Jul 2014 | Buy 2'000 SUMITOMO MITSUI FINANCIAL GROUP @4'052.50 JPY<br>Reference:<br>with 0.3% comm | 8'202'260 JPY | | -8'202'260 JPY |
| 28 Jul 2014 | 29 Jul 2014 | Sell USD 80'659 / Buy JPY 8'202'260 @101.6906 | | 8'202'260 JPY | 0 JPY |
| 25 Sep 2014 | 30 Sep 2014 | Sell 2'000 SUMITOMO MITSUI FINANCIAL GROUP @4'528.50 JPY<br>Reference:<br>please charge 0.4% | | 9'011'715 JPY | 9'011'715 JPY |
| 02 Oct 2014 | 06 Oct 2014 | Buy USD 82'676 / Sell JPY 9'011'715 @109.0004 | 9'011'715 JPY | | 0 JPY |
| 03 Dec 2014 | 03 Dec 2014 | Dividend 2'000 SUMITOMO MITSUI FINANCIAL GROUP @50.00 JPY | | 101'622 JPY | 101'622 JPY |
| 08 Jun 2015 | 10 Jun 2015 | Transfer - Foreign exchange Spot 262.27 JPY | 33'261 JPY | | 68'361 JPY |
| 12 Jun 2015 | 12 Jun 2015 | Buy JPY 6'746 / Sell USD 55.65 @121.2219 | | 6'746 JPY | 75'107 JPY |
| 12 Jun 2015 | 16 Jun 2015 | Transfer - Foreign exchange Spot 601.5 JPY | 75'107 JPY | | 0 JPY |

Produced on 31 Dec 2015    S.E.&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.<br>Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

US_00000603

Customer number: ███ from 02/01/2014 to 31/12/2015

## Cash Movements: GBP

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| **Balance as of 01 Jan 2014** | | | | | 0.00 GBP |
| 24 Jul 2014 | 29 Jul 2014 | Buy 3'000 BURBERRY GROUP PLC -SHS @14.48 GBP<br>Reference:<br>with 0.3% comm | 43'832.18 GBP | | -43'832.18 GBP |
| 28 Jul 2014 | 28 Jul 2014 | Buy GBP 43'832 / Sell USD 74'549 @1.7008 | | 43'832.00 GBP | -0.18 GBP |
| 29 Jul 2014 | 31 Jul 2014 | Transfer - Foreign exchange Spot 0.31  GBP | | 0.18 GBP | 0.00 GBP |
| 14 Oct 2014 | 16 Oct 2014 | Buy 2'300 BURBERRY GROUP PLC -SHS @14.2087 GBP<br>Reference:<br>please charge 0.5% of trade fee | 33'040.58 GBP | | -33'040.58 GBP |
| 21 Oct 2014 | 23 Oct 2014 | Buy GBP 33'040.58 / Sell USD 54'524.54 @1.6502 | | 33'040.58 GBP | 0.00 GBP |
| 21 Oct 2014 | 23 Oct 2014 | Sell 5'300 BURBERRY GROUP PLC -SHS @14.61 GBP<br>Reference:<br>Please charge 0.5% of trade fee | | 76'967.40 GBP | 76'967.40 GBP |
| 27 Oct 2014 | 28 Oct 2014 | Sell GBP 76'967.40 / Buy USD 121'484.49 @1.5784 | 76'967.40 GBP | | 0.00 GBP |
| 31 Oct 2014 | 31 Oct 2014 | Debit interest - Debit int. as of 31.10.14 GBP 28.9 | 28.90 GBP | | -28.90 GBP |
| 27 May 2015 | 29 May 2015 | Transfer - Foreign exchange Spot 44.53  GBP | | 28.90 GBP | 0.00 GBP |

S.E.&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.<br>Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

15/17

US_00000604

Customer number ███  from 02/01/2014 to 31/12/2015

## Cash Movements: CHF

| Operation Date | Value Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|
| Balance as of 01 Jan 2014 | | | | | 0.00 CHF |
| 24 Jul 2014 | 29 Jul 2014 | Buy 400 ROCHE HOLDING AG-GENUSSCHEIN -SHS @270.00 CHF<br>Reference:<br>with 0.3% comm | 108'438.95 CHF | | -108'438.95 CHF |
| 24 Jul 2014 | 29 Jul 2014 | Buy 700 DUFRY AG -SH @165.70 CHF<br>Reference:<br>with 0.3% comm | 116'461.37 CHF | | -224'900.32 CHF |
| 28 Jul 2014 | 29 Jul 2014 | Sell USD 249'141 / Buy CHF 224'900 @0.9027 | | 224'900.00 CHF | -0.32 CHF |
| 29 Jul 2014 | 31 Jul 2014 | Transfer - Foreign exchange Spot 0.36 CHF | | 0.32 CHF | 0.00 CHF |
| 24 Sep 2014 | 29 Sep 2014 | Buy 260 DUFRY AG -SH @147.00 CHF<br>Reference:<br>charge 0.4% trade fee | 38'414.98 CHF | | -38'414.98 CHF |
| 02 Oct 2014 | 07 Oct 2014 | Sell 400 ROCHE HOLDING AG-GENUSSCHEIN -SHS @280.50 CHF<br>Reference:<br>please charge 0.5% of trade fee | | 111'519.65 CHF | 73'104.67 CHF |
| 09 Oct 2014 | 10 Oct 2014 | Sell CHF 73'104.67 / Buy USD 75'554.14  @0.9676 | 73'104.67 CHF | | 0.00 CHF |
| 14 Oct 2014 | 16 Oct 2014 | Buy 430 DUFRY AG -SH @128.50 CHF<br>Reference:<br>please charge 0.5% of trade fee | 55'586.53 CHF | | -55'586.53 CHF |
| 21 Oct 2014 | 23 Oct 2014 | Buy CHF 55'586.53 / Sell USD 60'309.36  @0.9217 | | 55'586.53 CHF | 0.00 CHF |
| 31 Oct 2014 | 31 Oct 2014 | Debit interest - Debit int. as of 31.10.14 CHF 73.11 | 73.11 CHF | | -73.11 CHF |
| 02 Dec 2014 | 02 Dec 2014 | Sell 1'390 DUFRY AG -SH @151.9466 CHF | | 209'072.52 CHF | 208'999.41 CHF |
| 28 Nov 2014 | 03 Dec 2014 | Buy USD 217'507 / Sell CHF 209'938  @0.9652 | 209'938.00 CHF | | -938.59 CHF |
| 02 Dec 2014 | 04 Dec 2014 | Transfer - FEES REIMBURSEMENT | | 938.59 CHF | 0.00 CHF |

S.E&O. Prices stated are closing prices as of the date shown which is the last available. In absence of any such prices securities are conservatively priced at Zero. Prices do not represent future market valuation.<br>Please check this statement and in case of disagreement inform us in writing within 30 days of the date of this statement in line with our General Business Conditions.

US_00000605