

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 18, 2019

**BY ECF**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States* **v.** *Marcos Elias*, 18 Cr. 419 (GHW)

Dear Judge Woods:

      The Government writes in response to the supplemental sentencing submission filed by the defendant Marcos Elias on July 11, 2019 ("Def. Suppl. Ltr.") seeking a sentence of probation on Count One. For the reasons set forth in the Government's sentencing submission filed on April 18, 2019 (ECF No. 44) and the additional reasons discussed below, the Government respectfully submits that the Court sentence Mr. Elias to a term of imprisonment within the Guidelines sentencing range of 33 to 41 months' imprisonment on Count One followed by a mandatory consecutive sentence of two year's imprisonment on Count Four, which would be sufficient but not greater than necessary to serve the purposes of sentencing and would be fair and appropriate. Because the parties do not dispute that the two-year mandatory consecutive sentence on Count Four must be imposed independently of the sentence to be imposed on Count One, *see* 18 U.S.C. § 1028A(b)(3), the Government will only address the defendant's request for a sentence of probation on Count One.

**I.    Mr. Elias Should Not Receive a Below-Guidelines Variance on Count One for His Purported Cooperation**

      As discussed in detail in the Government's prior sentencing submission, the defendant's recommended sentence of probation on Count One, when considered independently of the two-year sentence on Count Four, is wholly insufficient to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Nothing has materially changed as a result of the defendant's attempt to provide information to the Government in connection with the *Fatico* hearing that the defendant himself requested and that the Court ultimately determined would not affect his sentencing. Nevertheless, the defendant now seeks a sentence of probation based on what the defendant claims is his "unusual and fulsome efforts to provide information to the government." (Def. Suppl. Ltr. at 1.) As set forth below, because Mr. Elias did not provide any material assistance to the Government and the Government does not credit the information he provided, there is no basis for the Court to grant a downward variance below the Guidelines range on

Count One, let alone a variance as extreme as a probationary sentence. *See United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) ("District judges are . . . generally free to impose sentences outside the recommended range. When they do so, however, they must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.").

### A. Brief Background

As the parties previously informed the Court, after the filing of the parties' sentencing submissions made clear that there was a factual dispute regarding the respective roles of Mr. Elias and his co-defendant and cooperating witness Evandro Dos Reis Jr. in the aggravated identity theft, defense counsel approached the Government about meeting with Mr. Elias. The Government was open minded to receiving new information from Mr. Elias, including any credible information that might implicate Mr. dos Reis in the aggravated identity theft and contradict Mr. dos Reis' representations to the Government in connection with his cooperation. However, after the Government met with the defendant and with defense counsel and carefully considered the information provided by them, the Government ultimately did not credit the information provided by Mr. Elias, in large part because it was not corroborated by any other evidence. In contrast, the information provided by Mr. dos Reis to the Government, which was largely consistent over the four years of his cooperation, was corroborated by email correspondence obtained during the course of the investigation.

The parties thereafter proceeded to the *Fatico* hearing on July 2, 2019. At the *Fatico* hearing, the Court determined the hearing was unnecessary, finding that: (1) the Government's scrutiny of Mr. dos Reis's proffered explanations to the Government for his conduct and any alleged misstatements by Mr. dos Reis to the Government would not affect the sentencing of Mr. Elias; (2) whether Mr. dos Reis was duped by Mr. Elias with respect to the aggravated identity theft would not affect the sentencing of Mr. Elias and the Court will not consider that issue; and (3) whether Mr. Elias shared any portion of the $752,000 in fraud proceeds with Mr. dos Reis would not affect the sentencing of Mr. Elias and the Court will not consider that issue at sentencing.

### B. Applicable Law

The Government agrees with Mr. Elias that the Court *may* consider a defendant's attempts to cooperate with the Government in determining an appropriate sentence under 18 U.S.C. § 3553(a), even if the Government does not make a motion for a downward departure under U.S.S.G. § 5K1.1. (*See* Def. Suppl. Ltr. at 3.) However, in the context of discussing whether a district court adequately considered a defendant's cooperation absent a Section 5K1.1. motion by the Government, the Second Circuit "underscore[d] that the requirement that the sentencing judge consider a § 3553(a) factor that may cut in a defendant's favor does not bestow on the defendant an entitlement to receive any particular 'credit' under that factor." *United States v. Fernandez*, 443 F.3d 19, 33–34 (2d Cir. 2006), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007); *United States v. Robinson*, 741 F.3d 588, 600 (5th Cir. 2014) (district court "retains discretion as to whether and what weight to give that cooperation evidence").

2

Further, the Second Circuit has upheld sentences where the Court considered but ultimately did not grant a below-Guidelines variance for cooperation by a defendant based, at least in part, on the Government's assessment of the defendant's cooperation. *See Fernandez*, 443 F.3d at 33–34 (affirming district court's determination not to impose below-Guidelines sentence based on finding that defendant's "inability to cooperate in a manner that satisfied the Government 'undercut[ ] using that brief exploration of what it was like being a cooperator as something that should indicate in this case an alteration to a guideline sentence.'"); *United States v. Crisostomo*, 392 F. App'x 894, 896 (2d Cir. 2010) (affirming district court's determination to give defendant credit for "only some small amount of cooperation" where Government determined some information provided by defendant was false); *cf.* U.S.S.G. § 5K1.1, cmt. n.3 (directing the district court to give "substantial weight . . . to the government's evaluation of the extent of the defendant's assistance").

### C. Discussion

For the reasons set forth below, the Government does not believe that for Mr. Elias is entitled to a reduction in his sentence for providing information to the Government.

First, other than the uncorroborated information Elias provided during his interview with the Government (which will be discussed below), Elias and his counsel did not provide the Government with any new, material evidence that it could use to determine that Mr. dos Reis had violated the terms of his cooperation agreement by making false statements regarding his role in the offense or his knowledge and participation in the aggravated identity theft.[1] For that reason alone, Mr. Elias should not receive any variance for his purported cooperation. *See* U.S.S.G. § 5K1.1, cmt. n.2 ("Substantial assistance is directed to the investigation and prosecution of criminal activities by persons other than the defendant.").

Second, the Government did not credit the information provided by Mr. Elias during his interview with the Government. By way of summary, Mr. Elias told the Government that Mr. dos Reis was fully complicit in the aggravated identity theft and the creation of fake email accounts in the Victim's name.[2] In addition, Mr. Elias told the Government that he and Mr. dos Reis had agreed to steal the $752,000 in the Company Account from the inception of the fraud and to split the proceeds in half, but that Mr. Elias decided unilaterally to keep all the proceeds for himself because Mr. dos Reis would not become a co-signor on the Luxembourg bank account that received the fraud proceeds.[3] Finally, Mr. Elias asserted that it was Mr. dos Reis who initiated going after accounts of the Victim and family located at Firm-2. There is, however, no corroboration for Mr. Elias's account, which is inconsistent with email

---

[1] The supplemental discovery and 3500 materials that defense counsel reviewed and presented on were provided to them by the Government in connection with their request for a *Fatico* hearing and had already been reviewed by the Government.

[2] Capitalized terms have the same definitions as those in the Government's submission dated June 29, 2019 (ECF No. 57).

[3] Mr. Elias claimed that he later gave Mr. dos Reis approximately $15,000 of the fraud proceeds.

3

correspondence between him and Mr. dos Reis.  The Government is prepared to answer any inquiries from the Court regarding its determination to credit the account of Mr. dos Reis over the account of Mr. Elias, but sets forth below a few examples of documents that the Government considered in its assessment of the information provided by Mr. Elias[4]:

- On June 24, 2014, the day before the first fraudulent transfer request was sent by Mr. Elias from an email account purporting to belong to the Victim, Mr. Elias sent an email to Mr. dos Reis in which Mr. Elias stated that he received a call from the Victim and would call him back and then give feedback to Mr. dos Reis, which corroborates Mr. dos Reis's statements to the Government that he believed Mr. Elias was in actual contact with the Victim.  (*See* Exhibit A.)  When confronted with this document, Mr. Elias told the Government that (1) he lied to Mr. dos Reis in the email about receiving a call from the Victim because Mr. dos Reis was annoying him about whether he had received a response from the Victim, and (2) Mr. Elias later called Mr. dos Reis and told him that he never actually received a call from the Victim.  Mr. Elias also claimed that he sent the email to the Victim at the bottom of the email chain (which Mr. dos Reis was included on as a blind carbon copy) as a "test" to see if the Victim would respond, and that if there was a response he would not have gone through with the fraud.  But Mr. Elias then waited less than 48 hours after he sent the "test" email to the Victim to send the first fraudulent wire transfer request to Firm-1 purporting to be from the Victim.  Given this email record, the Government credits Mr. dos Reis's explanation that he believed Mr. Elias was in touch with the Victim, over the account Mr. Elias provided in his proffer.[5]

- After Mr. Elias sent over the first fraudulent transfer request purporting to be from an email account controlled by the Victim to Mr. dos Reis using his Firm-1 email account, Mr. dos Reis forwarded the wire transfer request to another employee at Firm-1 and flagged that the wire transfer request was missing the routing number, which led that employee to raise other issues with the wire transfer.  (*See* Exhibit B.)  Mr. Elias claimed during his interview with the Government that he and Mr. dos Reis had specifically discussed over the phone (1) that Mr. Elias would be sending the wire transfer request from a fake email account in the name of the Victim that Mr. Elias controlled, and (2) the language contained in the wire transfer request that Mr. Elias forged and the bank account that would receive the funds.  If that were the case, however, Mr. dos Reis would not have flagged the wire transfer request as containing errors to another employee at Firm-1, which raised suspicions regarding the transfer from the Company Account.

---

[4] The documents referenced are attached as exhibits.  Where a document contains Portuguese, it is followed by an English translation.  The Government is filing the documents under seal because they reference the Victim and third parties and contain identifying information.

[5] Mr. dos Reis told the Government that he sent the email with the sample wire instructions at the top of the email chain to Mr. Elias later the same day because Mr. Elias had called Mr. dos Reis and said that that he spoke with the Victim and the Victim wanted to transfer the funds and close the account.

4

- During his interview with the Government, Mr. Elias claimed that it was Mr. dos Reis who initiated seeking to steal money from accounts of the Victim and his family at Firm-2, even though Mr. dos Reis – according to Mr. Elias – only received $15,000 of the fraud proceeds from Firm-1 and Mr. Elias received the rest. When Mr. Elias was confronted with an email he sent to Mr. dos Reis which provides the name of a Firm-2 employee, lists account names to target at Firm-2, and states that "related to this officer (same bank and branch), I have 5 more accounts," Mr. Elias could not recall sending that last portion of the email and had no explanation for it. (*See* Exhibit C.)

In sum, the Government did not credit the information Mr. Elias provided. While the Government did use this information to confront Mr. dos Reis, that confrontation process is typical when assessing any cooperating witness's credibility upon learning new information and did not result in any material assistance to the Government, particularly when, as here, nothing changed as a result. Accordingly, the Government respectfully submits that the defendant does not deserve cooperation credit.

**II.      Defendant's Conditions of Confinement Do Not Warrant a Probationary Sentence**

Mr. Elias also seeks a probationary sentence on Count One on the basis that, as a deportable non-U.S. citizen, the Bureau of Prisons ("BOP") is likely to designate him to serve his sentence in a privately operated low-security prison rather than a BOP-operated Federal Prison Camp ("FPC"), which would result in harsher living conditions and fewer educational and recreational opportunities. (Def. Suppl. Ltr. at 5-7.) The Government has consulted with the BOP, which indicated that while it may be possible that Mr. Elias's status results in such a designation, it is not guaranteed and depends on multiple factors. In addition, Mr. Elias seeks a non-custodial sentence because he is likely to face additional detention pending his removal to Brazil, which could be up to ninety days. (*Id.* at 8-10.) While the Court may take these factors into account, particularly in determining what sentence within the Guidelines range to impose, the Government respectfully submits that the difference between a privately operated low-security prison and a BOP-operated Federal Prison Camp and the fact that the defendant may be detained pending removal from the United States do not warrant a below-Guidelines sentence.

In considering these factors, however, the Court should also consider that it was Mr. Elias who decided to perpetrate this fraud from Brazil to steal over $750,000 from an account he targeted in the United States, and that he was the primary – if not sole – beneficiary of the fraud. Any potential consequences on the type of designation that he receives and any additional detention he may face pending removal are directly a result of his choice to engage in this criminal conduct from abroad.

**III.     Conclusion**

As set forth in the Government's prior submissions, Mr. Elias was involved in all aspects of the fraud conspiracy. He committed multiple acts of aggravated identity theft by creating fake email accounts and forging wire transfer authorizations and a passport, attempted to steal money from other accounts of the Victim and his family at Firm-2, and received the entirety of the

5

$752,000 in fraud proceeds in a bank account solely controlled by him. For these serious crimes and after considering all of the factors under Section 3553(a), the Government respectfully submits that a term of imprisonment within the Guidelines sentencing range of 33 to 41 months' imprisonment on Count One, followed by a mandatory consecutive sentence of two year's imprisonment on Count Four, would be sufficient but not greater than necessary to serve the purposes of sentencing and would be fair and appropriate.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Sagar K. Ravi
Assistant United States Attorney
(212) 637-2195